**Not for Publication**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **DUAN SHAHEED,**<br><br>**Petitioner,**<br><br>**v.**<br><br>**WARDEN EAST JERSEY STATE PRISON,**<br><br>**Respondent.** | **Civil Action No. 2:20-7272 (ES)**<br><br>**OPINION** |

**SALAS, DISTRICT JUDGE**

Before the Court is *pro se* petitioner Duan Shaheed ("Petitioner")'s petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (D.E. No. 1 ("Petition" or "Pet.")). Respondent Warden East Jersey State Prison ("Respondent") answered the Petition, (D.E. No. 8 ("Resp.")), and Petitioner filed a reply, (D.E. No. 11 ("Reply")). Having considered the parties' submissions, the Court decides this matter without oral argument. *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b). For the reasons set forth below, the Court **DENIES** the Petition and **DENIES** a certificate of appealability.

## I. BACKGROUND

On April 28, 2000, Shaheed and James Lamont Tutt were charged in a sixteen-count indictment with second-degree conspiracy to commit carjacking, robbery, and arson, contrary to N.J. Stat. Ann. §§ 2C:5-2, 2C:15-2, 2C:15-1, and 2C:17-1 (Count One); first-degree carjacking, contrary to N.J. Stat. Ann. § 2C:15-2a(2) (Count Two); six counts of first-degree armed robbery of Vladimir Francois, Deon Henderson, T.W., J.B., Ariel Santiago, and Carlos Velez, contrary to N.J. Stat. Ann. § 2C:15-1 (Counts Three, Four, Seven, Eight, Nine and Ten, respectively); three

counts of second-degree aggravated assault of Francois, Henderson, and Velez, contrary to N.J. Stat. Ann. § 2C:12-1b(1) (Counts Five, Six, and Eleven, respectively); first-degree felony murder of Santiago, contrary to N.J. Stat. Ann. § 2C:11-3a(3) (Count Twelve); first-degree purposeful or knowing murder of Santiago, contrary to N.J. Stat. Ann. § 2C:11-3a(1) and (2) (Count Thirteen); third-degree possession of a firearm (handgun) without a permit, contrary to N.J. Stat. Ann. § 2C:39-5b (Count Fourteen); second-degree possession of a handgun for unlawful purposes, contrary to N.J. Stat. Ann. § 2C:39-4a (Count Fifteen); and second-degree aggravated arson, contrary to N.J. Stat. Ann. § 2C:17-1a (Count Sixteen).[1] *See State v. Shaheed*, 2006 WL 1194981, at *1 (N.J. Super. Ct. App. Div. May 5, 2006) (per curiam).

The New Jersey Superior Court, Appellate Division ("Appellate Division") provided the following summary of facts and evidence presented at trial:

> The following facts were adduced at trial. At approximately 8:45 p.m. on December 19, 1998, Henderson and Francois were in Francois's car stopped at a traffic light at the intersection of Park Avenue and Washington Street, East Orange. The car was a blue four-door 1998 Mazda Millenia with factory-tinted windows, star-shaped chrome rims, and New Jersey License Plate No. WH774E. While stopped at the light, another vehicle pulled up along the driver's side of Francois's car. Francois and Henderson saw two men exit from the vehicle, each possessing a gun, and approach Francois's car, one on each side. The men told Henderson and Francois to exit the vehicle and give them their jackets. As Francois exited the vehicle, he heard two or three gunshots. The assailants took Francois's and Henderson's jackets, together with $40 to $50 from Henderson, and then drove off in Francois's car, after which Francois telephoned the police.
>
> At approximately 9:30 p.m., the same evening, J.B. and T.W. were walking on a sidewalk in Irvington. J.B. observed a "blue Mazda," fitting the description of Francois's automobile down to the license plate number, stop about forty-five feet in front of them. An individual exited the Mazda, walked back past J.B. and T.W., and

---

[1] T.W. and J.B. were juveniles at the time that the crimes were committed. *See State v. Shaheed*, 2006 WL 1194981, at *1 n.1 (N.J. Super. Ct. App. Div. May 5, 2006) (per curiam). Furthermore, Kyle Herrill was indicted on Counts One and Sixteen, his case was severed, and he pled guilty on both counts. *Id.* at *1 n.2.

then turned around and followed them. As they were walking, J.B. heard the individual behind them say "Take it off," which J.B. understood to mean his jacket. J.B. took off his jacket, and gave it to the individual. The assailant demanded money, but J.B. and T.W. did not have any. The perpetrator returned to the Blue Mazda and drove away.

At about 10:30 p.m. the same night, Velez and Santiago were walking on Wright Street towards Frelinghuysen Avenue, Newark. As they approached the intersection, Velez observed "a dark color Mazda Millenia" with "five-point star" chrome rims driving south on Frelinghuysen Avenue towards the intersection with two people in the front and either two or three people in the back. As the vehicle pulled to the curb at the intersection, Velez saw the right front passenger door open, and someone say "Yo, holdup," and the front passenger started shooting. When Velez heard the shots, he ran from the intersection and did not look back. Santiago ran about five or six feet in the opposite direction, and was shot, falling to the ground. After hiding for about ten or fifteen minutes, Velez returned to the intersection, and saw Santiago lying face down in a pool of blood. Santiago was pronounced dead on the morning of December 20, 1998. According to the Medical Examiner, his "cause of death was a gunshot wound of neck and head."

On December 21, 1998, Henderson met with investigator Arnold Valentin of the Essex County Prosecutor's Office, and described the individual who robbed him as a dark-skinned black man with a very low haircut or bald head, between twenty-two and twenty-three years old, about six feet tall, and wearing a black, yellow and green jacket. He described the individual who robbed Francois as between twenty-three and twenty-four years old, about five feet ten inches tall, and stocky with medium brown skin, and wearing a black hooded jacket. On December 31, 1998, Henderson met again with Valentin. During the interview, Henderson looked through photograph books, and identified a photograph of Tutt as the individual who robbed Francois. The record is silent as to whether defendant's picture was contained in any of the photograph books. A month later, on February 5, 1999, Henderson again met with Valentin, and for the first time, advised Valentin that the man who robbed him was wearing a baseball hat. Valentin showed Henderson photograph array "H," which he had comp[iled] in January 1999. The array contained one photograph of defendant in picture slot No. 5, together with five photographs of other black males. Henderson advised Valentin: "[i]t[,] [the assailant,] looks like No. 5, but the picture is too light. The features are the same, but the skin is darker."

> Valentin then showed Henderson photograph array "E," which Valentin had compiled at the same time that he compiled array "H." Array "E" also had a photograph of defendant in picture slot No. 5, along with five other photographs of black males. Henderson advised Valentin that picture No. 5 looked like his assailant, but that his assailant had worn a hat. Valentine cut a hat from a piece of paper, and placed i[t] on the photographs that Henderson chose from each of the two arrays. Henderson then confirmed his identification of defendant's photograph in each of the two arrays.
>
> On February 8, 1999, Francois identified a photograph of defendant as the man who carjacked him and robbed Henderson. Francois never made an out-of-court identification of Tutt. Contrary to the photo identifications, at trial Henderson and Francois testified that they could not identify either defendant or Tutt as the robbers. Francois stated that he knew Tutt from school, and would have recognized him.
>
> On January 15, 1999, J.B. made an out-of-court photograph identification of defendant as the individual who robbed him and T.W. J.B. testified accordingly at trial, and identified a picture of Francois's car as the car defendant was in that night.
>
> On February 1, 1999, Velez met with Valentin, and made a photograph identification of defendant as the individual who fired the shots, and of Tutt as one of the men in the back of the Mazda automobile. Velez stated that he observed the shooter, who exited from the front passenger seat, when he was completely out of the car. He described the shooter as a black male, around five feet eleven inches to six feet tall, between twenty-one and twenty-three years of age, dark skin, clean shaven, 250 to 275 pounds and wearing dark clothes. He described the rear passenger as a black male, medium to light skinned complexion, a light beard on his face, and in his twenties. Valentin showed Velez photograph array "H," and Velez identified defendant as the shooter. Valentin showed Velez photograph array "D," which contained a picture of Tutt, and Velez identified Tutt as a passenger in the vehicle. At trial, Velez again identified defendant as the shooter, and Tutt as one of the other men in the car. He also identified a photograph of Francois's automobile as the car that defendant and Tutt were in the night of the murder.

*Id.* at *2–4.

Petitioner and Tutt were tried together in May and June 2001, and, at the close of the

prosecution's case, the state trial court granted Tutt's motion to dismiss Counts Five, Seven, and Eight. *See id.* at *1. The jury found Petitioner guilty on Counts Seven, Eight, Fourteen, and Fifteen and found Petitioner and Tutt not guilty on Counts One and Sixteen. *See id.* The jury was unable to reach a verdict on the remaining counts. *See id.*

In January 2002, a retrial occurred on the deadlocked charges. *See id.* At the close of the State's case, the trial court granted Tutt's motion for judgment of acquittal on the carjacking and robbery of Francois charges, and, at the close of the case, granted Tutt's motion for acquittal as to the charges of robbery and aggravated assault of Henderson. *See id.* Following a replay of Velez's testimony, Petitioner and Tutt renewed their motion for judgment of acquittal as to the charges of robbery of Santiago and Velez, and felony murder of Santiago, which was granted. *See id.* The jury found Petitioner guilty of carjacking, robbery of Francois and Henderson, and aggravated assault of Francois, Henderson, and Velez. *See id.* Regarding the charge of knowing or purposeful murder of Santiago, the jury found Petitioner guilty of the lesser-included offense of first-degree aggravated manslaughter. *See id.*

Petitioner was sentenced on his carjacking conviction to a twenty-year term of imprisonment, with a seventeen-year NERA (No Early Release Act, N.J. Stat. Ann. § 2C:43-7.2) parole disqualifier; a consecutive term of twenty years on his conviction of robbery of Francois, together with a seventeen-year NERA parole disqualifier; concurrent terms of twenty years each with a NERA parole disqualifier on his convictions for robbery of Henderson, T.W. and J.B.; concurrent terms of ten years each with a NERA parole disqualifier on his convictions for aggravated assaults of Francois, Henderson, and Velez; a concurrent term of twenty years on his conviction for aggravated manslaughter of Santiago; a concurrent term of five years with a five-year parole disqualifier period on his conviction of unlawful possession of a weapon without a

permit; and a concurrent term of five years with a NERA parole disqualifier and a three-year period of parole ineligibility pursuant to the Graves Act, N.J. Stat. Ann. § 2C:43-6c, on his conviction of possession of a weapon for an unlawful purpose. *Id.* at *2. All counts except Count Three were to run concurrently to Count Two. *Id.* Accordingly, the aggregate custodial sentence was forty years' imprisonment with a thirty-four year period of parole ineligibility. *Id.*

Petitioner appealed from his conviction and sentence. *See id.* at *4. He raised eight points or issues on appeal (with one point divided into four subpoints). *Id.* at *4–5. In one subpoint, he argued that the imposition of non-presumptive sentences violated *Blakely v. Washington*, 542 U.S. 296 (2004). *Shaheed*, 2006 WL 119481, at *5. On May 5, 2006, the Appellate Division remanded for resentencing on the grounds that the terms imposed violated *Blakely*. *Id.* at *14–16. It also determined that Petitioner's convictions for second-degree aggravated assault of Francois, Henderson, and Velez should have been merged into the convictions for first-degree robbery of the same three victims. *Id.* at *15. The Appellate Division affirmed the convictions in all other respects. *Id.* at *16. The New Jersey Supreme Court denied Petitioner's application for certification on September 8, 2006. *See State v. Shaheed*, 188 N.J. 354 (2006).

On remand, the trial court merged the three counts and imposed the same aggregate custodial term. *See State v. Shaheed*, No. A-2110-14T2, 2016 WL 5832129, at *3 (N.J. Super. Ct. App. Div. Oct. 6, 2016) (per curiam). Petitioner appealed, and the Appellate Division heard the appeal on an "excessive sentence oral argument" (ESOA) calendar and remanded for resentencing. *See id.* "On remand, the judge provided a detailed explanation of reasons for imposing the same aggregate custodial sentence that had been imposed when defendant was first sentenced[,]" and, on October 16, 2012, the Appellate Division affirmed on the ESOA calendar (remanding the matter for correction of the judgment of conviction to reflect appropriate jail credits). *Id.* On May 15,

2013, the New Jersey Supreme Court denied Petitioner's petition for certification. *See State v. Shaheed*, 213 N.J. 538 (2013).

In March 2007, Petitioner filed a petition for post-conviction relief ("PCR"), alleging: "Ineffective assistance of counsel, Illegal Sentence, Trial judge abused his discretion, My sixth amendment right was violated." *Id.* at *3. In September 2013, Petitioner filed a second PCR petition. *See id.* Through counsel, Petitioner raised the following claims in his PCR proceeding:

> <u>POINT ONE</u>
>
> PETITIONER'S ASSERTION OF STATE AND FEDERAL CONSTITUTIONAL ISSUES IS NOT BARRED BY R. 3:22 ET SEQ
>
> <u>POINT TWO</u>
>
> PETITIONER WAS DENIED THE EFFECTIVE ASSISTANCE OF TRIAL COUNSEL
>
> <u>POINT THREE</u>
>
> TRIAL COUNSEL'S CUMULATIVE ERROR DENIED DEFENDANT A FAIR TRIAL
>
> <u>POINT FOUR</u>
>
> PETITIONER WAS DENIED THE EFFECTIVE ASSISTANCE OF APPELLATE COUNSEL
>
> <u>POINT FIVE</u>
>
> PCR COUNSEL INCORPORATES BY REFERENCE ALL ISSUES RAISED BY PETITIONER IN HIS PETITION

(D.E. No. 1-1 ("Addenda") at 4 (ECF Pagination)); *see also Shaheed*, 2016 WL 5832129, at *3.

In a supplemental memorandum, Petitioner raised the following two issues:

> <u>POINT ONE</u>
>
> PETITIONER WAS DENIED HIS FEDERAL AND STATE CONSTITUTIONAL RIGHT TO THE EFFECTIVE

ASSISTANCE OF TRIAL COUNSEL. U.S. CONST. AMENDS. VI, XIV; N.J. CONST. ART. I, 1

A. Trial counsel failed to do any investigation prior to trial and as a result failed to call a favorable witness

POINT TWO

TRIAL COUNSEL WAS INEFFECTIVE IN FAILING TO ADEQUATELY CROSS EXAMINE

(Addenda at 4); *see also Shaheed*, 2016 WL 5832129, at *3. Additionally, Petitioner raised two points in a *pro se* submission:

POINT ONE

PETITIONER WAS DENIED HIS SIXTH AMENDMENT RIGHT TO CONFRONT [T.W.]

POINT TWO

PETITIONER WAS DENIED A FAIR TRIAL WHEN THE SHERIFF'S OFFICER TOOK A JUROR TO PAY HIS RENT AND THE TRIAL JUDGE SIGNED AN ORDER PERTAINING TO HIS RENT/EVICTION ORDER

(Addenda at 5); *see also Shaheed*, 2016 WL 5832129, at *3.

In support of the PCR petition, Petitioner submitted an affidavit from Mark Caldwell, who averred he witnessed the theft of the automobile from the carjack victims. *See Shaheed*, 2016 WL 5832129, at *4. According to the affidavit, Herrill (the third co-defendant who pled guilty to two counts) and another man stole the vehicle (which was left unoccupied with the engine running); a month or so after the theft, Herrill told Caldwell "that the guy that burnt the car that he stole is named Pootah Shaheed from Alexander Street and that he was locked up now[;]" and Caldwell personally knew Herrill and Petitioner had been wrongfully convicted. *See id.*

On October 28, 2014, the PCR court entered an order denying the PCR petition without an evidentiary hearing for the reasons the court stated on the record on October 27, 2014. (*See* D.E.

No. 8-20 at Da111; No. 10-5 ("28T")). Petitioner timely appealed and presented the following arguments:

> POINT I: THE TRIAL COURT ERRED IN DENYING THE DEFENDANT'S PETITION FOR POST CONVICTION RELIEF WITHOUT AFFORDING HIM AN EVIDENTIARY HEARING TO FULLY ADDRESS HIS CONTENTION THAT HE DID NOT RECEIVE ADEQUATE LEGAL REPRESENTATION FROM TRIAL COUNSEL AS A RESULT OF COUNSEL'S FAILURE TO PRESENT A WITNESS WHO WOULD HAVE PROVIDED EXCULPATORY TESTIMONY ON THE DEFENDANT'S BEHALF.
>
> POINT II: THE TRIAL COURT ERRED IN DENYING THE DEFENDANT'S PETITION FOR POST CONVICTION RELIEF SINCE THE DEFENDANT WAS DENIED HIS RIGHT TO A FAIR TRIAL AND HIS RIGHT TO BE TRIED BY A FAIR AND IMPARTIAL JURY.
>
> A. FACTUAL BACKGROUND.
>
> B. THE DEFENDANT WAS DENIED HIS RIGHT TO A FAIR TRIAL AS WELL AS HIS RIGHT TO BE TRIED BY A FAIR AND IMPARTIAL JURY AS A RESULT OF THE TRIAL COURT'S REFUSAL TO DISMISS JUROR NO. 12 FROM THE JURY OR, IN THE ALTERNATIVE BY FAILING TO *SUA SPONTE* DECLARE A MISTRIAL.
>
> POINT III: THE TRIAL COURT ERRED IN DENYING THE DEFENDANT'S PETITION FOR POST CONVICTION RELIEF, IN PART, ON PROCEDURAL GROUNDS PURSUANT TO *RULE* 3:22-4.

*Shaheed*, 2016 WL 5832129, at *1; (*see also* Addenda at 5).

In a decision dated October 6, 2016, the Appellate Division found that, "[w]ith one exception, we agree with the PCR judge" that Petitioner failed to establish a prima facie case of ineffective assistance of counsel triggering a right to an evidentiary hearing. *Shaheed*, 2016 WL 5832129, at *5. "The exception is [Petitioner's] claim that his trial counsel failed to conduct an adequate pre-trial investigation" relating to Caldwell. *Id.* The Appellate Division "reject[ed]

[Petitioner]'s remaining claims of ineffective assistance of counsel, substantially for the reasons given by the judge who denied the PCR petition." *Id.* at *6. "These remaining claims consist almost entirely of unsupported, conclusory assertions, many of which are belied by the trial records. These remaining claims are without sufficient merit to warrant further discussion in a written opinion. *R.* 2:11-3(e)(2)." *Id.* Accordingly, the Appellate Division vacated the October 28, 2014 Order and remanded for an evidentiary hearing limited to the "PCR witness" (Caldwell) issue. *Id.* It further specified that the issue of whether the ineffective assistance claim concerning the PCR witness affected only the carjacking-related offenses or all of the offenses charged in the indictment should be clearly resolved at the evidentiary hearing, and, because the PCR judge expressed his views about the weight to be given to the PCR witness's statement, "another judge should preside over the evidentiary hearing." *Id.* The Appellate Division explained that its opinion should not be construed as suggesting that trial counsel either was or was not ineffective, noting that this assessment "will likely turn on a multitude of factual and credibility determinations the judge will make based on the evidence presented at the evidentiary hearing." *Id.* ("We have merely determined that defendant is entitled to an evidentiary hearing to attempt to prove his claim.").

On March 7, 2017, the New Jersey Supreme Court denied Petitioner's petition for certification. *State v. Shaheed*, 229 N.J. 248 (2017).

On December 8, 2017, a different PCR judge conducted an evidentiary hearing and heard testimony from Caldwell and Petitioner. (*See* D.E. No. 10-6 ("29T")). Caldwell testified that he was "locked up" at a "youth house" when the crimes were committed and that he is currently serving a life sentence for murder at New Jersey State Prison. *See State v. Shaheed*, No. A-3932-17T4, 2019 WL 1648122, at *2 (N.J. Super. Ct. App. Div. Apr. 16, 2019) (per curiam). According to Caldwell, he met Petitioner in prison, knew about Petitioner's situation, and offered to prepare

the affidavit, which Caldwell typed himself. *See id.* Cadwell claimed "he had heard the information he put in the certification" and that Herrill told him that the guy who burnt the car was named Pootah Shaheed (and was not the Petitioner). *See id.* Petitioner testified that he claimed he was driving a car in which Herrill and Herrill's friends were passengers, they asked him to pull over so they could relieve themselves, and he saw them steal a car parked with the engine running. *See id.* Petitioner said he followed them for a while but, after losing them, he drove off by himself. *See id.*

The PCR court denied relief, concluding that, because Caldwell was incarcerated when the crimes were committed, Caldwell's statements were inadmissible hearsay and Petitioner thereby failed to carry his burden of proving the two prongs of an ineffective assistance of counsel claim. *See id*. Petitioner presented the following argument on appeal to the Appellate Division:

> I. THE PCR COURT ERRED IN RULING THAT SHAHEED RECEIVED THE EFFECTIVE ASSISTANCE OF COMPETENT COUNSEL IN CONNECTION WITH THE TRIAL COUNSEL'S FAILURE TO INTERVIEW A CRITICAL WITNESS.

*Id.* at *2. On April 16, 2019, The Appellate Division affirmed for substantially the same reasons stated by the PCR court, *id.* at *2, and the New Jersey Supreme Court denied certification on September 10, 2019, *State v. Shaheed*, 239 N.J. 261 (2019).

On May 21, 2020,[2] Petitioner filed his federal habeas Petition. Regarding his grounds for relief and supporting facts, Petitioner refers to his "Addendum Two," which states (recited herein verbatim):

> **ISSUES RAISED IN SUPPORT OF PETITIONER'S § 2254 PETITION**
>
> **A. GROUND ONE:** THE STATE COURT'S RULING THAT PETITIONER WAS NOT DEPRIVED OF HIS SIXTH

[2] *See Burns v. Morton*, 134 F.3d 109, 113 (3d Cir. 1998) (holding that a *pro se* prisoner's habeas petition is "deemed filed at the moment he delivers it to prison officials for mailing to the district court").

AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF TRIAL COUNSEL FOR FAILING TO CONDUCT PRE-TRIAL INVESTIGATIONS AND TO CALL FAVORABLE WITNESSES WAS CONTRARY TO CLEARLY ESTABLISHED FEDERAL LAW AND AN UNREASONABLE APPLICATION OF FEDERAL LAW THEREFORE THE WRIT SHOULD ISSUE

**SUPPORTING FACTS:**

1. The petitioner relies on the supporting facts detailed in the brief filed by assigned counsel in support of the Petition for Post-Conviction Relief.

**B. GROUND TWO:** THE STATE COURT'S RULING THAT PETITIONER WAS NOT DEPRIVED OF HIS SIXTH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF APPELLATE COUNSEL FOR FAILING TO CONDUCT PRETRIAL INVESTIGATIONS AND TO CALL FAVORABLE WITNESSES WAS CONTRARY TO CLEARLY ESTABLISHED FEDERAL LAW AND AN UNREASONABLE APPLICATION OF FEDERAL LAW THEREFORE THE WRIT SHOULD ISSUE

**SUPPORTING FACTS:**

1. The petitioner relies on the supporting facts detailed in the brief filed by assigned counsel in support of the Petition for Post-Conviction Relief.

**C. GROUND THREE:** THE STATE COURT'S RULING THAT PETITIONER WAS NOT DEPRIVED OF HIS SIXTH AMENDMENT RIGHT TO CONFRONT [T.W.] WAS CONTRARY TO CLEARLY ESTABLISHED FEDERAL LAW AND AN UNREASONABLE APPLICATION OF FEDERAL LAW THEREFORE THE WRIT SHOULD ISSUE

**SUPPORTING FACTS:**

1. The petitioner relies on the supporting facts detailed in the brief filed by assigned counsel in support of the petitioner's direct appeal.

**D. GROUND FOUR:** THE STATE COURT'S RULING THAT PETITIONER WAS NOT DEPRIVED OF HIS DUE PROCESS RIGHT TO A FAIR TRIAL WHEN THE SHERIFF'S OFFICER AT THE DIRECTION OF THE TRIAL JUDGE TOOK A JUROR TO PAY HIS RENT AND THE TRIAL JUDGE SIGNED AN ORDER PERTAINING TO HIS RENT/EVICTION ORDER WAS

> CONTRARY TO CLEARLY ESTABLISHED FEDERAL LAW AND AN UNREASONABLE APPLICATION OF FEDERAL LAW THEREFORE THE WRIT SHOULD ISSUE
>
> **SUPPORTING FACTS:**
>
> 1. The petitioner relies on the supporting facts detailed in the brief filed by assigned counsel in support of the Petition for Post-Conviction Relief.
>
> **E. GROUND FIVE:** THE STATE COURT'S RULING THAT PETITIONER WAS NOT DEPRIVED OF HIS DUE PROCESS RIGHT TO A FAIR TRIAL AS WELL AS HIS RIGHT TO BE TRIED BY A FAIR AND IMPARTIAL JURY AS A RESULT OF THE TRIAL COURT'S REFUSAL TO DISMISS JUROR NO. 12 FROM THE JURY OR, IN THE ALTERNATIVE BY FAILING TO SUA SPONTE DECLARE A MISTRIAL WAS CONTRARY TO CLEARLY ESTABLISHED FEDERAL LAW AND AN UNREASONABLE APPLICATION OF FEDERAL LAW THEREFORE THE WRIT SHOULD ISSUE
>
> **SUPPORTING FACTS:**
>
> 1. The petitioner relies on the supporting facts detailed in the brief filed by assigned counsel in support of the Petition for Post-Conviction Relief.
>
> **F. GROUND SIX:** THE STATE COURT'S RULING THAT PETITIONER'S SENTENCE DID NOT VIOLATE BLAKELY V. WASHINGTON, 542 U.S. 296 (2004) WAS CONTRARY TO CLEARLY ESTABLISHED FEDERAL LAW AND AN UNREASONABLE APPLICATION OF FEDERAL LAW THEREFORE THE WRIT SHOULD ISSUE
>
> **SUPPORTING FACTS:**
>
> 1. The petitioner relies on the supporting facts detailed in the brief filed by assigned counsel in support of the petitioner's direct appeal.

(Addenda at 8–9). Petitioner requests an evidentiary hearing, which was denied in the state courts. (Pet. at 16).

On September 18, 2020, the Honorable John Michael Vazquez, U.S.D.J., entered an Order noting that Petitioner "failed to complete page seventeen [of the Petition], which includes the acknowledgment that he must include all the grounds for relief from the conviction or sentence in this petition and if he fails to set forth all the grounds, he may be barred from presenting additional grounds at a later date." (D.E. No. 2 ("September 18, 2020 Order" or "Sept. 18, 2020 Order") at 1). "This Court is required by the Third Circuit decision in *Mason v. Meyers*, 208 F.3d 414 (3d Cir. 2000) to notify Petitioner of the following consequences of filing such a petition under the Antiterrorism and Effective Death Penalty Act ("AEDPA") and to give Petitioner an opportunity to file one all-inclusive § 2254 petition." (*Id.*). Accordingly, Judge Vazquez provided Petitioner notice that, under AEDPA, prisoners challenging the legality of their detention pursuant to a state court judgment must include in one petition all the arguments they have to collaterally attack the judgment, and, except in extremely limited circumstances, file the one all-inclusive petition within one year of the date on which the judgment of conviction becomes final by the conclusion of direct review or the expiration of the time for seeking such review. (*Id.* at 2). Because it was not apparent whether Petitioner intended the Petition to be an all-inclusive petition, Judge Vazquez ordered Petitioner, within 45 days, to inform the Court how he wants to proceed by choosing one of the following options: (a) have the pending Petition ruled upon as filed; or (b) withdraw the pending Petition and file one all-inclusive petition (subject to the one-year statute of limitations). (*Id.* at 2–3). The September 18, 2020 Order stated that, "if Petitioner does not file a signed response choosing one of the above options within 45 days of the entry of this Notice and Order, the [] Court will rule on Petitioner's Petition as filed[.]" (*Id.* at 3).

Judge Vazquez further observed the following regarding Petitioner's Addendum Two:

> Finally, Petitioner provides in "Addendum Two" of his Petition, that he "relies on the supporting facts detailed in the brief filed by

> assigned counsel in support of the Petitioner for Post-Conviction Relief" or "by assigned counsel in support of the petitioner's direct appeal." (D.E. No. 1-1). Petitioner must list every ground for relief in the federal habeas petition and he cannot incorporate his claims and arguments by references. *See Hunt v. D'Ilio*, No. 14-6024, 2014 WL 5811114, *3 (D.N.J. Nov. 10, 2014) ("Petitioner's amended habeas petition shall detail each of his claims individually and without any incorporation-by reference: by expressly stating the exact legal challenge and supporting factual predicate of every claim.")

(*Id.* at 2–3). Petitioner did not respond to the September 18, 2020 Order.

On February 9, 2021, Judge Vazquez ordered Respondents to answer the Petition, (D.E. No. 3), and Respondent answered the Petition on May 13, 2021, (D.E. No. 8). On September 30, 2021, Petitioner filed his Reply. (D.E. No. 11).

On February 23, 2023, Judge Vazquez concluded that Ground Two was unexhausted and rendered the Petition a mixed petition containing both exhausted and unexhausted claims and accordingly ordered that, within forty-five (45) days, Petitioner shall file either: (i) a written submission stating that he wants to dismiss his unexhausted claim (Ground Two) and proceed with the remainder of the Petition as filed; or (ii) a motion to stay the entire Petition so he can pursue the unexhausted claim in state court in which he must establish that he has good cause for his failure to raise the additional claim earlier, the additional claim has merit, and he is not engaging in intentional dilatory litigation tactics. *Shaheed v. Warden E. Jersey State Prison*, No. 20-7272, 2023 WL 2188765, at *3 (D.N.J. Feb. 23, 2023).

In an April 1, 2023 letter, Petitioner stated his wish to proceed with his exhausted claims only and requested that the unexhausted claim be dismissed. (D.E. No. 13). Judge Vazquez dismissed Ground Two on May 16, 2023. (D.E. No. 14). On September 26, 2023, this matter was reassigned to the Undersigned. (D.E. No. 15).

## II. LEGAL STANDARD

Under the AEDPA, Pub. L. No. 104-132, 110 Stat. 1214 (1996), amending 28 U.S.C. § 2254, a district court "shall entertain an application for a writ of habeas corpus [o]n behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Habeas petitioners bear the burden of establishing their entitlement to relief for each claim presented in a petition based upon the record that was before the state court. *See Eley v. Erickson*, 712 F.3d 837, 846 (3d Cir. 2013); *Parker v. Matthews*, 567 U.S. 37, 41 (2012). District courts are required to give great deference to the determinations of the state trial and appellate courts. *See Renico v. Lett*, 559 U.S. 766, 772–73 (2010). Specifically, district courts must defer to the "last reasoned decision of the state courts on the petitioner's claims." *Simmons v. Beard*, 590 F.3d 223, 231–32 (3d Cir. 2009) (internal quotation marks and citation omitted). Moreover, a federal court reviewing the state court's adjudication under § 2254(d)(1) generally must confine its examination to evidence in the record. *See Cullen v. Pinholster*, 563 U.S. 170, 181–82 (2011).

Where a claim has been adjudicated on the merits by the state courts, the district court shall not grant an application for writ of habeas corpus unless the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "[C]ontrary to clearly established Federal law" means that (i) the state court applied a rule that contradicted the governing law set forth in United States Supreme Court precedent or (ii) the state court confronted a set of facts that were materially indistinguishable from

United States Supreme Court precedent and arrived at a different result than the Supreme Court. *See Eley*, 712 F.3d at 846 (internal quotation marks omitted) (citing *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000)). "'[C]learly established Federal law' for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of [the United States Supreme] Court's decisions." *See Woods v. Donald*, 575 U.S. 312, 316 (2015). An "unreasonable application" of clearly established federal law is a court's "objectively unreasonable" application of law, not merely a court's erroneous application. *Eley*, 712 F.3d at 846 (quoting *Renico*, 559 U.S. at 773).

"When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong." *Woods*, 575 U.S. at 316. Where a petitioner challenges an allegedly erroneous factual determination of the state courts, "a determination of a factual issue made by a State court shall be presumed to be correct [and t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Furthermore, "[w]hen a state court arrives at a factual finding based on credibility determinations, the habeas court must determine whether that credibility determination was unreasonable." *See Keith v. Pennsylvania*, 484 F. App'x 694, 697 (3d Cir. 2012) (citing *Rice v. Collins*, 546 U.S. 333, 339 (2006)).

*Pro se* filings must be liberally construed in favor of the *pro se* litigant. *See James v. New Jersey*, No. 24-8271, 2024 WL 4212192, at *2 (D.N.J. Sept. 17, 2024).

## III. DISCUSSION

As Judge Vazquez explained in the September 18, 2020 Order, Petitioner, in Addendum Two to his Petition, "relies on the supporting facts detailed in the brief filed by assigned counsel in support of the Petitioner for Post-Conviction Relief" or "by assigned counsel in support of the

[P]etitioner's direct appeal." (Sept. 18, 2020 Order at 2 (quoting Addenda)). However, "Petitioner must list every ground for relief in the federal habeas petition and he cannot incorporate his claims and arguments by references." (*Id.* (citing *Hunt*, 2014 WL 5811114, at *3)). "'Habeas corpus petitions must meet heightened pleading requirements.' *McFarland v. Scott*, 512 U.S. 849, 856 (1994); *see also* 28 U.S.C. § 2254(c)(2) Rule 2(c) (clarifying that a § 2254 petitioner must 'specify all the grounds for relief available to the petitioner' and actually 'state the facts supporting each ground')." *Thompson v. Warren*, No. 11-7164, 2014 WL 3778738, at *4 (D.N.J. July 31, 2014). Accordingly, because federal habeas law does not permit pleading through an "incorporation by reference," Petitioner's grounds or claims (Grounds One, Three, Four, Five, and Six) must be rejected as "invalid." *See id.* Furthermore, to the extent Petitioner does present arguments in favor of Grounds Four, Five, and Six in his Reply, the Court notes that "a petitioner cannot raise claims for the first time in a reply brief." *Troxell v. Warden N.J. State Prison*, No. 21-11227, 2024 WL 2796447, at *9 n.1 (D.N.J. May 31, 2024) (first citing *Judge v. United States*, 119 F. Supp. 3d 270, 284 (D.N.J. 2015); and then citing *McNeil v. Johnson*, No. 18-10003, 2019 WL 3805118, at *1 (D.N.J. Aug. 12, 2013)).

Alternatively, the Court considers the claims or grounds for relief on their merits. The Court agrees with Respondents that Petitioner fails to show that the Appellate Division's adjudication of such claims resulted in a decision that was either contrary to, or involved an unreasonable application of, clearly established federal law, or was based on an unreasonable factual determination.[3] (*See* Resp. at 18–48).

---

[3] In his Reply, Petitioner states that "[t]he Respondent in its Answer failed to supply Petitioner with a copy of the record of Exhibits cited throughout its Answer, and has raised a lack of exhaustion defense to most of the claims raised by petitioner." (D.E. No. 11 ("Reply") at 1 (ECF Pagination)). "As such, to prevent any further delay of this matter, the Petitioner proceeds only on the claims of Ground Four and Ground Five of his § 2254 Petition." (*Id.*; *see also id.* at 2 (stating that, "[b]ecause the Respondent has failed to supply the Petitioner with copies of the Exhibits 1 through 67 submitted to the Court, and has only provided the Petitioner with the Index to the Exhibits relied on by the

**A. Ground One: THE STATE COURT'S RULING THAT PETITIONER WAS NOT DEPRIVED OF HIS SIXTH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF TRIAL COUNSEL FOR FAILING TO CONDUCT PRE-TRIAL INVESTIGATIONS AND TO CALL FAVORABLE WITNESSES WAS CONTRARY TO CLEARLY ESTABLISHED FEDERAL LAW AND AN UNREASONABLE APPLICATION OF FEDERAL LAW THEREFORE THE WRIT SHOULD ISSUE**

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court set forth a two-part test by which courts must evaluate claims of ineffective assistance of counsel. First, a petitioner must show that "counsel's performance was deficient," which means that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. Specifically, counsel's performance is deficient if counsel's representation falls "below an objective standard of reasonableness." *Id.* at 688. In examining the question of deficiency, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" *Id.* at 689. As such, "the [petitioner] bears the burden of proving that counsel's representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986) (citing *Strickland*, 466 U.S. at 688–89).

---

Respondent, the Petitioner will reference the Exhibits as listed in the Index")). Petitioner also briefs the merits of Ground Six in his Reply. (*Id.* at 19–24).

However, as the Court has observed, the grounds for relief alleged in the Petition are invalid due to improper pleading. Furthermore, in his Reply, Petitioner quotes or summarizes language from the state court transcripts not contained in the Response, indicating that Petitioner, even if he does not possess the "Exhibits," has access to at least parts of the state court record. (*Compare* Resp. at 33 (stating that, when Juror No. 3 could not be found, the prosecutor asked the trial court not to proceed with thirteen jurors, neither defense counsel joined in the request, and the trial court concluded that, because of scheduling constraints, it would not empanel a fourteenth juror but would instead proceed with thirteen jurors) *with* Reply at 4–5 (indicating that the trial judge stated that attempts would be made to locate the missing juror and that he would decide at 1:30 p,m. how to proceed and that the judge went on to state "we lose more than one juror, and it becomes a mistrial, no harm, no foul" (quoting "(May 23, 2001, 62-1 to 5) (Exhibit 33)")). Petitioner does not explicitly ask to be "supplied" with the exhibits or indicate the significance of any exhibit. Instead, he merely indicates that such exhibit(s) may be relevant to the exhaustion question. This Court disposes of the Petition on its merits, *see* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."), based on its consideration of the arguments (and the relevant parts of the state court record) Petitioner raises in his Reply and in the state court proceedings.

Next, the petitioner must show that the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687. Prejudice occurs when "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

"An attorney 'does not act deficiently or create prejudice by failing to raise or prevail on a meritless argument.' *Minaya v. United States*, No. 21-18050, 2023 WL 3338626, at *3 (D.N.J. May 10, 2023) (citing *United States v. Sanchez*, 53 F. App'x 208, 210 (3d Cir. 2002))." *Taylor v. United States*, No. 21-12788, 2026 WL 207349, at *5 (D.N.J. Jan. 27, 2026); *see also United States v. Sanders*, 165 F.3d 248, 253 (3d Cir. 1999) ("There can be no Sixth Amendment deprivation of effective counsel based on an attorney's failure to raise a meritless argument." (first citing *Newsted v. Gibson*, 158 F.3d 1085, 1090 (10th Cir. 1998); then citing *Rodriguez v. United States*, 17 F.3d 225, 226 (8th Cir. 1994); and then citing *Shah v. United States*, 878 F.2d 1156, 1162 (9th Cir. 1989))).

In "the brief filed by assigned counsel in support of the Petition for Post-Conviction Relief," (Addenda at 8), Petitioner's PCR counsel asserted that "[t]he complete failure of trial counsel to do any investigation in preparation for Petitioner's trial was patently deficient" and that "Petitioner was greatly prejudiced because as a result of trial counsel's failure to prepare for trial, witnesses who would have exonerated Petitioner and support his alibi defense were not presented to the jury." (D.E. No. 8-16 at Da83). According to this brief, Petitioner was located in the vicinity of the crime scenes and there were witnesses who would testify that he did not commit any crimes related to the victim. (*Id.* at Da85). In a "letter memorandum in lieu of a formal brief in support of Petitioner's supplemental memorandum" submitted by PCR counsel, Petitioner stated that, had

his trial counsel conducted an adequate investigation, he would have located Caldwell; as Caldwell indicated in his affidavit, Petitioner was not involved in the vehicle theft and related crimes, and, given the fact that neither victim was able to identify Petitioner, there was a strong probability that Petitioner would have been acquitted of all charges. (D.E. No. 8-17 at Da94, Da97).

On remand from the Appellate Division, the PCR court conducted an evidentiary hearing at which it heard testimony from Caldwell. *See Shaheed*, 2019 WL 1648122, at *2. It denied Petitioner's ineffectiveness claim, explaining that it "does not even reach the [Caldwell] credibility issue because Caldwell's testimony would not have been admissible at trial because it is hearsay testimony[; according to his testimony,] he was not present at the scene and his knowledge of the facts is based upon what other individuals told him" and, additionally, "Caldwell's testimony would not be admissible under any of the hearsay exceptions." (D.E. No. 8-29 ("Statement of Reasons") at 94a). "Therefore, even if the attorney had found Caldwell and had him testify at trial, his testimony about the incident would not have been admissible. Since the testimony is legally inadmissible, it would not have undermined the strength of the state's case or affected the jury's verdict." (*Id.*). Because Caldwell's testimony would have been inadmissible hearsay, the PCR court concluded that Petitioner failed to satisfy either prong of *Strickland*. (*Id.* at 95a).

The Appellate Division affirmed the PCR court's ruling substantially for the reasons provided in the PCR Court's Statement of Reasons:

> We previously reversed the order that denied defendant's PCR petition without a hearing. We remanded for a hearing to determine whether defendant's trial counsel was ineffective for failing to interview and present the testimony of an alleged eyewitness, Mark Caldwell. *Shaheed*, No. A-2110-14, slip op. at 16. In support of his PCR petition, defendant had presented Caldwell's certification, in which Caldwell averred he witnessed a co-defendant, Kyle Herrill, and another man — not defendant — steal the car involved in the crimes.

> During the remand hearing, defendant's counsel called Caldwell as a witness. When defense counsel asked Caldwell where he was when the crimes were committed, he replied, "locked up." Caldwell testified that he was locked up at a "youth house." He also testified that he is currently serving a life sentence for murder in New Jersey State Prison. He said he met defendant in prison, he knew about defendant's "situation," and offered to prepare the certification, which he typed himself. He claimed he had heard the information he put in the certification, and that Herrill told him the "guy that burnt the car . . . is named Pootah Shaheed," not defendant.
>
> Defendant also testified at the remand hearing. He claimed he was driving a car in which co-defendant Herrill and a friend of Herrill were passengers. They asked him to pull over so they could relieve themselves and he saw them steal a car parked with the engine running. He followed them for a while, but lost them, so he drove off without them.
>
> Based on Caldwell's testimony, Judge Sivilli denied defendant's PCR petition. In a written decision, she concluded that in view of Caldwell's testimony that he was locked up when the crimes were committed, his statements were inadmissible hearsay. Defendant thus failed to carry his burden of proving the two-pronged test of ineffective assistance of counsel as required by *Strickland v. Washington*, 466 U.S. 668 (1984), and *State v. Fritz*, 105 N.J. 42 (1987).
>
> Defendant presents a single argument on appeal:
>
> > I. THE PCR COURT ERRED IN RULING THAT SHAHEED RECEIVED THE EFFECTIVE ASSISTANCE OF COMPETENT COUNSEL IN CONNECTION WITH THE TRIAL COUNSEL'S FAILURE TO INTERVIEW A CRITICAL WITNESS.
>
> We affirm, substantially for the reasons expressed by Judge Sivilli in her written decision. Defendant's argument is without sufficient merit to warrant further discussion. *R.* 2:11-3(e)(2).

*Shaheed*, 2019 WL 1648122, at *2.[4]

[4] New Jersey Court Rule 2:11-3(e)(2) provides that "[w]hen in an appeal in a criminal . . . matter, the Appellate Division determines that some or all of the arguments made are without sufficient merit to warrant discussion in a written opinion, the court may affirm by specifying such arguments and quoting this rule and paragraph."

The state courts' decisions were not contrary to clearly established federal law. Both the Appellate Division and the PCR court applied the well-established "two-pronged test of ineffective assistance of counsel" rule "as required by [*Strickland*]." *Id.*; (Statement of Reasons at 94a–95a). Furthermore, there is no indication that the state courts confronted a set of facts that were materially indistinguishable from United States Supreme Court precedent and arrived at a different result than the United States Supreme Court.

Given Caldwell's testimony at the evidentiary hearing, the state courts also reasonably determined that Petitioner failed to establish either deficient performance or prejudice under *Strickland*. Caldwell testified that, at the time the crimes were committed, he was "locked up" in "the youth house" in Essex County. (D.E. No. 10-6 at 5:2–18). He accordingly heard about what happened "from other people." (*Id.* at 9:4–6). Applying state evidentiary law, the PCR court and the Appellate Division conclusively determined that Caldwell's testimony would constitute inadmissible hearsay. *Shaheed*, 2019 WL 1648122, at *2; (Statement of Reasons at 94a–95a); *see also Priester v. Vaughn*, 382 F.3d 394, 402 (3d Cir. 2004) (for ineffectiveness claims where underlying claim is grounded on state law claim, the state court's ruling on that state law claim is binding); *Johnson v. Rosemeyer*, 117 F.3d 104, 109 (3d Cir. 1997) ("[I]t is well established that a state court's misapplication of its own law does not generally raise a constitutional claim. The federal courts have no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension." (quoting *Geschwendt v. Ryan*, 967 F.2d 877, 888–89 (3d Cir. 1992))). Accordingly, it was objectively reasonable to conclude that, "[s]ince Caldwell's testimony would not have been admissible at trial, Defendant has failed to show how his 'counsel's performance was deficient'" and likewise "does not show any prejudice." (Statement of Reasons at 95a); *see also Taylor*, 2026 WL 207349, at *5 (stating that an attorney

does not act deficiently or create prejudice by failing to pursue a meritless position).

Ground One is **DENIED**.

**B. Ground Three: THE STATE COURT'S RULING THAT PETITIONER WAS NOT DEPRIVED OF HIS SIXTH AMENDMENT RIGHT TO CONFRONT [T.W.] WAS CONTRARY TO CLEARLY ESTABLISHED FEDERAL LAW AND AN UNREASONABLE APPLICATION OF FEDERAL LAW THEREFORE THE WRIT SHOULD ISSUE**

In a July 20, 2024 letter memorandum in lieu of a formal brief, Petitioner (through PCR counsel) raised the following supplemental claim in support of his request for PCR relief:

> 1. Petitioner was denied his Sixth Amendment right to confront [T.W.]
>
> Mr. Shaheed asserts that his accuser [T.W.] was available to testify at trial and was not presented. Mr. Shaheed has a Sixth Amendment right to confront his accuser. Had [T.W.] testified, he had the capability of impacting the outcome of the trial.

(D.E. No. 8-18 ("Letter Mem.") at Da100). The PCR court rejected this claim on its merits:

> In considering petition's claim and/or allegations that he was denied his Sixth Amendment right to confront, the then juvenile victim, [T.W.], it is clear that this victim's testimony was in no way used to convict the petitioner. Instead, clearly, the State relied entirely on the testimony of J.B., which was clearly sufficient to convict the petitioner as to his participation in the robbery of both J.B. and T.W. Accordingly, petition[er] never had the [c]onstitutional right to confront T.W. as to the robbery. In the same vein, I find that evidence need not be introduced if it is cumulative or a waste of time, reference is made to New Jersey Rule of Evidence 401. In this case, the State decided to present the testimony of J.B. in support of the robbery charge of the two juvenile victims. Petitioner, I find, fails to make any showing indicating that [T.W.'s] testimony would have changed the outcome of the trial. In fact, such evidence would have likely been detrimental to his case. And, again, I find that petitioner fails to show error on part of counsel or the possibility of a different outcome.

(28T at 23:5–24:1).

According to the Appellate Division, "[t]he judge also rejected defendant's claim he was denied his sixth amendment right to confront one of the juvenile victims[,]" and "[t]he victim in

question did not testify and therefore 'was in no way used to convict [defendant].'" *Shaheed*, 2016 WL 5832129, at *4 (alteration in original). The Appellate Division "reject[ed] defendant's remaining claims of ineffective assistance of counsel, substantially for the reasons given by the judge who denied the PCR petition." *Id.* at *6. "These remaining claims consist almost entirely of unsupported, conclusory assertions, many of which are belied by the trial records. These remaining claims are without sufficient merit to warrant further discussion in a written opinion. *R.* 2:11-3(e)(2)." *Id.*

The Confrontation Clause of the Sixth Amendment provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." The state courts concluded that Petitioner never had the constitutional right to confront T.W. because the State relied entirely on the testimony of J.B., and T.W.'s testimony was in no way used to convict him. (28T at 23:5–24:1); *Shaheed*, 2016 WL 5832129, at *4. Petitioner has failed to show that the state courts' rulings were contrary to, or involved an unreasonable application of, clearly established federal law, or were based on an unreasonable factual determination. *See United States v. Wolfson*, 322 F. Supp. 798, 822 (D. Del. 1971) (stating that the prosecution is not required to call every witness who might be able to give some evidence about the crime), *aff'd*, 454 F.2d 60 (3d Cir. 1972). Accordingly, Ground Three is **DENIED**.

### C. Ground Four: THE STATE COURT'S RULING THAT PETITIONER WAS NOT DEPRIVED OF HIS DUE PROCESS RIGHT TO A FAIR TRIAL WHEN THE SHERIFF'S OFFICER AT THE DIRECTION OF THE TRIAL JUDGE TOOK A JUROR TO PAY HIS RENT AND THE TRIAL JUDGE SIGNED AN ORDER PERTAINING TO HIS RENT/EVICTION ORDER WAS CONTRARY TO CLEARLY ESTABLISHED FEDERAL LAW AND AN UNREASONABLE APPLICATION OF FEDERAL LAW THEREFORE THE WRIT SHOULD ISSUE & Ground Five: THE STATE COURT'S RULING THAT PETITIONER WAS NOT DEPRIVED OF HIS DUE PROCESS RIGHT TO A FAIR TRIAL AS WELL AS HIS RIGHT TO BE TRIED BY A FAIR AND IMPARTIAL JURY AS A RESULT OF THE TRIAL COURT'S REFUSAL TO DISMISS JUROR NO. 12 FROM THE

**JURY OR, IN THE ALTERNATIVE, BY FAILING TO SUA SPONTE TO DECLARE A MISTRIAL WAS CONTRARY TO CLEARLY ESTABLISHED FEDERAL LAW AND AN UNREASONABLE APPLICATION OF FEDERAL LAW THEREFORE THE WRIT SHOULD ISSUE**

These two related grounds for relief implicate events that occurred during Petitioner's first trial. Prior to the opening statements, Juror No. 3 could not be found, and the prosecutor asked the trial court not to proceed with the thirteen remaining jurors. (D.E. No. 8-36 ("1T") at 61:17–73:8). Neither Petitioner's trial counsel nor counsel for his co-defendant (Tutt) joined in the prosecution's request. (*Id.* at 63:9–16). The trial court refrained from empaneling a fourteenth juror and instead proceeded with thirteen jurors. (*Id.* at 63:16–64:8).

On the fourth day of the trial, Tutt's counsel informed the trial court that Juror No. 12 had a landlord-tenant problem. (D.E. No. 9-3 ("5T") at 3:11–4: 1). The following colloquy occurred:

> THE COURT: The problem has already been resolved. The record should reflect the juror came in today, told my Sheriff's officer that he had a problem with regard to being put out of his apartment over the weekend. Because he had to take it – those are emergent matters – my Sheriff's officer brought the juror down to landlord/tenant and made arrangements with the landlord/tenant people who contacted the attorney for the hold, agreed on a stay, and order to show cause for a new date was issued.
>
> Zach, is that a fair statement.
>
> THE COURT OFFICER: True. Yes, it is.
>
> THE COURT: Your position, Ms. Sorrel [co-defendant's counsel]– I believe that's juror number 12. Your position?
>
> MS. SORREL: My position is that I'm asking that juror number 12 be excused. It's obvious that he has more pressing concerns weighing on his mind.
>
> THE COURT: It's a ridiculous motion. We took care of that. Anything else?

(*Id.*).

Later that same day, Tutt's counsel renewed her request to excuse Juror No. 12, and Petitioner's trial counsel now joined in the request. (*Id.* at 91:8–92:7). Both counsel argued that the assistance of the Sheriff's officer and the trial court could create sympathy for law enforcement and the trial court, affecting the jury deliberations. (*Id.*). When Petitioner's counsel stated that he had recently learned during the break that the trial court had provided additional assistance to Juror No. 12, the trial court responded: "it was . . . a pro forma – I can tell you exactly what it was." (*Id.* at 93:13–18). The following exchange then occurred between the trial court and counsel:

> MR. SAMPSON [Petitioner's trial counsel]: I understand what it was, Judge.
>
> THE COURT: Well, then let's put it on the record. It was to put the date, which didn't come through, on the order that I signed this morning.
>
> All right. Let's go to the –
>
> MR. SAMPSON: Did you enter an order, Judge?
>
> THE COURT: I signed the order. I told you that. Well, I'll put it on the record again.
>
> MR. SAMPSON: No, you didn't, Judge. I thought he was over at Landlord/Tenant court.
>
> THE COURT: No. He was at Landlord/Tenant. And to expedite matters, he made his arrangements with Landlord/Tenant. I was led to believe that the – someone at Landlord/Tenant called the attorney for the landlord, who agreed to stay, to allow him to get back into the apartment and wanted a return date, and Landlord/Tenant determined an order to show cause.
>
> To expedite matters, I received a call from Landlord/Tenant, and I said I am not going to prepare an order, I'm not going to get involved in an order, but if you need a judge's signature, providing that there is a consent now with the – rather than wait additional time. The court has to weigh having a jury here much later than anticipated and doing – signing the pro forma order. The Court did not participate in any negotiations, any discussions, did not have conferences with any attorney, or anybody else, for that matter.

So I signed the order. Obviously you have your position already, and you're not going to withdraw the position in light of the fact that you found out I signed the order, so I'll incorporate that into your objection. Is there anything else?

MR. SAMPSON: No, Your Honor.

THE COURT: All right. Let me make my ruling. Number 1, I think that the Sheriff's officer is to be commended. Most Sheriff's officers would not take the time. Knowing the time constraints we have, knowing that the Court is aware, Mr. Sampson, that you have a graduation that I feel is very important – and I don't like to make unnecessary problems for trial attorneys, albeit competent trial attorneys, they have enough problems trying a case, so wherever I can I assist them, I will, but I also have to balance that against getting the case over with this week and not having it go into next week.

And so, when this issue was presented to me, the Sheriff's officer said what can I do, and I said, well, you can get him down, because he has to appear in court. Now, if I didn't have the I'm going to say cooperation, more than cooperation, if I didn't have the concern that the Sheriff's officer has in identifying with this case, and as you said, Mr. Sampson, with a sense of fairness, we could have just let him go hang around, I might have obviously made a call trying to find out where he is on the list, et cetera, and be here waiting at 10 to one.

The Sheriff's officer was willing to accompany him to the landlord/tenant court. He had to appear. He was out of the apartment for the weekend. And I understand that – Officer Zach told me that he had some money; it was a question of paying rent. So figured, well, give him an opportunity all the more. This way, when he came back, it's the antithesis of what Ms. Sorrel is suggesting, that he would be stressed out, he'd be relieved and, therefore, could concentrate on the case.

And so Officer Zach brought him over there, and, as I indicated, Officer Zach called me up and said that, you know, if there's a stay, there's a landlord involved, and I asked to speak to the supervisor, and the supervisor – Rose Mary I believe was her first name, I don't know her last name – said that she knew the attorney and that she would contact the attorney and that, in light of the fact that there was some payment, if the attorney agreed, there would be a stay, but they needed an order.

> And it's Monday, and I know what landlord/tenant is, and the Court felt that, rather than interrupt their process, it's just as easy for her to do that, get an order prepared, and I instructed her I knew nothing about landlord/tenant and that I wasn't going to sign the order, and I asked her adding a little levity I hoped that my resignation wasn't included because if it is I'd be out of a job, and I – the order was presented to me, and I signed it. And I did not read it. I'll put that on the record. I didn't read it because I had to rely on Landlord/Tenant. So that's it in a nutshell, and I'll stand by what I said.
>
> Now, with regard to the merits of the motion, we're down to 13, we're at the end of the case. If this were a police case, the Court might give a little bit more weight to defense counsel, because the Jury really, to decide a case such as a drug case, has to make a determination of officer's credibility. This is not a – police are involved as they are in any case. The Jury is not going to make a determination of innocence and guilt on what the police did in this case. It's an identification case, an alibi case, and the fact witnesses are going to be the ones that are critical, even though, for the purpose of the record, the State produced experts for completeness of the record, this is not an expert case.
>
> So that the officers who testified, really on both sides, are pro forma. Don't forget, Ms. Sorrel, you can't have it both ways. You're relying and made a big to do on the record that you wanted this officer to come in and testify, a police officer, so that perhaps this juror could say, you know what, police officers were good to me, and I'm going to believe that police officer. So it goes both ways. Not a police case.
>
> So the Court is going to deny the motion. However, if counsel and the prosecutor feel, assuming that all 13 jurors are here when they go to deliberate, that they want to agree to make that juror as an alternate, I'll entertain it. If they don't that means that their position wasn't as strong as it otherwise would be. That gives you just something to think about, you don't have to make a determination now, but I always like to keep you alert.

(*Id.* at 93:17–98:11).

On the fifth day of the trial, the prosecutor asked the trial court to *voir dire* Juror No. 12. (D.E. No. 9-4 ("6T") at 5:2–6:7). The prosecutor explained that she had spoken with members of her office's appellate section, and they suggested that the juror be questioned as to whether there

was any taint and whether he felt he would be biased because of the trial court's assistance. (*Id.* at 5:12–21 (noting that "there would be no reason to remove him and/or that he could be seated, as agreed on, as seated as an alternate")). Given the consensus reached that "the safe and prudent course" was to seat the juror as an alternate, the trial court reserved on the request. (*Id.* at 5:22–6:6).

Subsequently, the prosecutor, defense counsel, and the trial court observed Juror No. 10 sleeping through the jury charge. (*Id.* at 141:23–42:8). The prosecutor suggested that Juror No. 10 be designated the alternate in place of Juror No. 12. (*Id.* at 142:5–8). The prosecutor again moved for *voir dire*, and the trial court agreed (and addressed with counsel the "logistics" of conducting the *voir dire*). (*Id.* at 142:16–44:4).

Following the jury charge, the trial court *voir dired* Juror No. 12:

> THE COURT: Now, the reason you're here, [Juror No. 12], I have to be satisfied – and counsel is present with regard to the events that occurred on your landlord-tenant problem – that I have to be satisfied and counsel have to be satisfied that the assistance afforded by the Sheriff's officer and, indirectly, the Court, so that you could continue on with your function in this jury, does not taint you, it does not prevent you from being fair and impartial to both sides in this case.
>
> JUROR: Umm hmm.
>
> THE COURT: I'm going to ask you a couple of questions. Counsel, if they deem it appropriate, will ask you a couple of questions. First of all – let me ask you directly. Did those events in any way affect your ability to decide the case based upon the evidence presented, the testimony of the witnesses and the credibility of the witnesses?
>
> JUROR: No.
>
> THE COURT: The fact that law enforcement is in the case on behalf of the State and law enforcement, though a different branch, assisted you with regard to the landlord-tenant situation, does that affect your ability to look at this fairly and clearly and make a decision based on the merits?

JUROR: No, it does not.

(*Id.* at 179:23–80:23). Defense counsel and the prosecutor indicated that they had no additional questions for the juror and were satisfied with the proceeding. (*Id.* at 181:1–21). The trial court admonished Juror No. 12 not to discuss "the contents of what took place" with "[t]he obvious reason . . . that you shouldn't taint any other juror." (*Id.* at 181:10–15).

In a *pro se* supplemental letter brief filed in support of his PCR petition, Petitioner argued that he "was denied his constitutional right to fair trial before an impartial jury and effective assistance of appellate counsel when an 'appearance of impropriety' occurred during his trial involving the trial court, an officer of the court, and a deliberating juror, which under existing law requires a presumption of prejudice warranting a reversal and a new trial." (D.E. No. 8-19 at Da101). Petitioner's PCR counsel also asserted that "Petitioner was denied a fair trial when the Sheriff's Officer took a juror to pay [his] rent and the trial judge signed an order pertaining to her rent/eviction order" and that "the trial court abused its discretion in this matter." (Letter Mem. at Da100).

The PCR court denied relief on Petitioner's claim regarding Juror No. 12:

> Finally, in the *pro se* letter, or supplemental memorandum, received on September 18, 2014, defendant argues that he was denied his Sixth Amendment right to a fair and impartial jury. Specifically, petitioner points to juror number 12, who apparently, prior to deliberations, received assistance from a sheriffs officer with regards to a landlord-tenant matter. Petitioner argues that the interaction "tainted" the juror, making him more sympathetic to the State's case. Notwithstanding, again, this argument or conclusion by the petitioner fails to provide any credible evidence to support the same, which again, I find, to be without merit. Although it is true that the juror received assistance from a sheriffs officer in the form of rent for his apartment after being evicted over the weekend, from my review of the transcript, it appears that the Court, trial court, took remedial measures to ensure the juror could remain fair and impartial during the course of the deliberations. Initially, the

> Court agreed to make juror number 12 the alternate, simply as a precaution. After, however, the State informed the Court that another juror, number 10, slept through most of the jury charge. The Court, therefore, made juror number 10 the alternate instead. At the request of the State, the Court conducted a *voir dire* of juror number 12 before deliberations began to determine whether or not he was, in fact, tainted. With respect to the landlord-tenant issue, the Court asked, "Did those events, in any way, effect your ability to decide the case based upon the evidence presented, the testimony of the witnesses, and the credibility of the witnesses?" Juror number 12, responded, "No." [The] Court proceeded, [asking if] the fact that law enforcement is in the case on behalf of the State, and law enforcement, though a different branch, assisted you with regard to the landlord-tenant situation, does that effect your ability to look at this fairly and clearly and make a decision based on the merits? The juror, again, responded, no. After giving counsel the opportunity to ask questions, which each counsel declined, the Court dismissed the juror – the juror instruct – I should say, the juror back to the juror room. Therefore, any risk of jury taint or bias was thereby eliminated. Petitioner also suggests that the only possible cure was removal of juror number 12 from the jury all together. In fact, defense counsel made the request to the trial court and the trial court denied the request. Again, as with the previous claims or allegations, I find the defendant fails to [c]ite any specific deficiencies on the part of counsel, nor do I find any credible proof as to taint of juror number 12, again, given the Court's *voir dire* of the juror. I find there is simply no argument that the incident had "an adverse effect on the outcome of this trial," again, references made to Strickland, 693 Super.

(28T at 24:15–26:20 (emphases added)). The Appellate Division affirmed the PCR court's ruling. It rejected defendant's claims of ineffective assistance of counsel substantially for the reasons provided by the PCR court, concluding that these remaining claims consist almost entirely of "unsupported, conclusory assertions, many of which are belied by the trial records" and are without sufficient merit to warrant further discussion under Rule 2:11-3(e)(2).[5] *Shaheed*, 2016 WL

[5] Respondent argues that Grounds Four and Five are procedurally defaulted. (Resp. at 48–51). In addition to rejecting the juror "argument" on its merits, the PCR court alternatively determined that the argument was procedurally barred by New Jersey Court Rule 3:22-4. (28T at 26:15–29:2). However, as Petitioner notes, "Respondent acknowledges that the Appellate Division on appeal from the order denying the PCR did not even entertain the Respondent's argument that the claim should have been raised on direct appeal." (Reply at 2 (citing Resp. at 51).) It is also undisputed that Petitioner exhausted before the state courts the claim that his attorney on direct appeal provided

5832129, at *6.

In his Reply, Petitioner addresses Ground Four at some length. (Reply at 2–19 (ECF Pagination)). He argues that "there were multiple problems that occurred with several jurors during the course of the trial" and that the trial court's actions were insufficient to remedy the potential prejudice arising from these improprieties, thereby violating his Sixth Amendment right to a fair and impartial jury. (Reply at 4). Specifically, Petitioner challenges the following actions by the trial court: the trial court's decision to risk a mistrial and "gamble" with Petitioner's Sixth Amendment right by going forward with thirteen jurors after it was unable to locate Juror No. 3 (despite the prosecutor's protest that it was inappropriate to proceed with only thirteen jurors), in lieu of selecting a replacement fourteenth juror under New Jersey Court Rule 1:8-2(d)(1); the trial court "angrily label[ling] the [co-counsel's initial] motion for Juror No. 12 to be removed [on the grounds that he would be distracted by more pressing concerns regarding his housing] as 'ridiculous,'" and its denial of this motion; the denial of the defendants' renewed motion to remove Juror No. 12 based on an appearance of impropriety and bias due to the assistance provided by the trial court and the sheriff's officer (which involved the trial court abruptly interrupting counsel); and the trial court's "calculated gamble with Petitioner's right to a fair and impartial jury" by designating Juror No. 12 as an alternate instead of granting the prosecutor's motion to *voir dire* Juror No. 12 to ensure the juror was not biased or tainted by the assistance he received. (*Id.* at 4–11).

According to Petitioner, "[b]ecause of the trial judge's previously miscalculated gamble to proceed with only 13 Jurors, the court was again confronted with another impropriety, that is, Juror

ineffective assistance of counsel by failing to raise the juror issue, and Petitioner argues that the ineffectiveness of his appellate counsel constitutes cause and prejudice excusing the procedural default. (*See* Reply at 2–3). Given the circumstances, the Court considers (and denies) Grounds Four and Five on their merits.

No. 10 visibly sleeping," and "[t]he trial judge was vehemently opposed to dismissing Juror No. 10 or No. 12, as he earlier acknowledged the 'risk' that it would result in a mistrial." (*Id.* at 12 (citing 1T at 62:1–5)). Although the trial court eventually acquiesced and *voir dired* Juror No. 12, Petitioner argues that the manner in which it handled the juror improprieties demonstrates that the trial court was more concerned with keeping to a tight schedule than safeguarding Petitioner's right to an impartial jury and its "deliberate indifference and calculated gamble" with his Sixth Amendment right "proved wrong too many times for this Court to have confidence in the outcome." (*Id.* at 13–14 ("The trial court's handling of the first juror impropriety created a situation that if another impropriety arose a mistrial would have to be declared. . . . Because the trial judge decided to gamble and proceed in this manner, it compromised how the trial judge handled the two additional improprieties that occurred because he was vehemently opposed to declaring a mistrial.")). In other words, Plaintiff contends that the trial court's actions and inactions (described above) resulted in an untenable situation in which it either had to declare a mistrial or submit the case to a jury with one of two compromised jurors (Juror No. 10 or Juror No. 12) clearly unsuited to remain on the panel. (*Id.*). The prejudice was allegedly "inescapable" because "at different points during the trial, the State actually conceded that the two jurors in question should be removed, or alternatively that one of the jurors should be designated as an alternate because of their inability to serve as a fair and unbiased juror." (*Id.* at 18–19 (citing 6T at 4:25–5:21, 142:3–8)).

Petitioner argues that that "the State court's ruling" does not merit any deference or the presumption of correctness. (*Id.* at 14). He contends that he has presented facts rebutting its determination and establishing by clear and convincing evidence that his Sixth Amendment rights were violated. (*Id.*). According to Petitioner, the ruling was contrary to clearly established federal

law because the trial court "was resolute" in its position that adhering to a tight schedule was more important than Petitioner's constitutional rights and the trial judge had already compromised his due process right to "a jury of twelve with two alternates" by ignoring the objections of the defense and the prosecutor's plea to *voir dire* Juror No. 12 and failing to act until another impropriety arose with respect to a third juror. (*Id.* at 15). "At this point, Juror No. 12 had been interacting with the other jurors for two full days without any instruction from the trial court not to discuss the assistance he received from the trial judge and the Sheriff's Officer." (*Id.*). Petitioner argues that the full extent of the potential prejudice of not immediately conducting a *voir dire* of Juror No. 12 could never be known because the trial court failed to ask Juror No. 12 "the critical question" whether Juror No. 12 discussed the landlord-tenant assistance with other jurors. (*Id.* at 16). Petitioner further contends that the PCR court's ruling was contrary to clearly established federal law and an unreasonable application of federal law based on the facts presented because the PCR court did not address his argument that the trial court's failure to immediately address and remedy the juror problems and instead to gamble with the Petitioner's Sixth Amendment right to keep to a tight schedule only exacerbated the deprivation of his right to an impartial jury. (*Id.* at 16–18).

For the reasons stated below, the Court concludes that Petitioner has failed to meet his burden to show that the state courts' adjudication of his contentions regarding the trial court's handling of Juror No. 12 was contrary to, or involved an unreasonable application of, clearly established federal law, or was based on an unreasonable factual determination.

It is undisputed that the right to a fair trial before an impartial jury is guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution. (Resp. at 38; Reply at 3). "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed." U.S. Const.

amend. VI. "Due process means a jury capable and willing to decide the case solely on the evidence before it, and a trial judge ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen." *Smith v. Phillips*, 455 U.S. 209, 217 (1982). A new trial is not constitutionally required "every time a juror has been placed in a potentially compromising situation . . . [because] it is virtually impossible to shield jurors from every contact or influence that might theoretically affect their vote." *Rushen v. Spain*, 464 U.S. 114, 118 (1983) (alteration in original) (quoting *Smith*, 455 U.S. at 217). "There is scarcely a lengthy trial in which one or more jurors do not have occasion to speak to the trial judge about something, whether it relates to a matter of personal comfort or to some aspect of the trial." *Id.* at 118.

*Voir dire* examination is critical to protecting a defendant's right to an impartial jury because it provides a means of uncovering juror bias. *See Smith*, 455 U.S. at 217; *United States v. Mack,* 816 F. App'x 691, 692 n.3 (3d Cir. 2020) ("Individual voir dire is the method of inquiry . . . we have preferred [w]here there is a significant possibility that a juror . . . has been exposed to prejudicial extra-record information." (alteration in original) (internal quotation marks omitted) (quoting *United States v. Console*, 13 F.3d 641, 667 (3d Cir. 1993))); *United States v. Mitchell*, 690 F.3d 137, 141 (3d Cir. 2012) ("Voir dire examination serves to protect the right to an impartial jury by providing the parties a means of uncovering juror bias." (citations omitted)). Where there is an allegation of juror bias or partiality, the trial judge must "determine the circumstances, the impact thereof upon the juror, and whether or not [they were] prejudicial, in a *hearing* with all interested parties permitted to participate." *Smith*, 455 U.S. at 216 (alterations in original) (quoting *Remmer v. United States*, 347 U.S. 227, 230 (1954)). Jurors are generally presumed to be impartial. *See Irvin v. Dowd*, 366 U.S. 717, 723 (1961). A new trial is warranted where the

defendant likely suffered substantial prejudice because of the jury's exposure to extraneous information. *See United States v. Lloyd*, 269 F.3d 228, 238 (3d Cir. 2001). In reviewing whether prejudice occurred, the trial court should conduct "an objective analysis by considering the probable effect of the allegedly prejudicial information on a hypothetical average juror." *Id.* (quoting *United States v. Gilsenan*, 949 F.2d 90, 95 (3d Cir. 1991)). The trial court has wide discretion in using *voir dire* to determine the presence or absence of prejudice.[6] *See Gov't of V.I. v. Dowling*, 814 F.2d 134, 137 (3d Cir. 1987), *aff'd*, 493 U.S. 342 (1990). The question of actual bias is one of fact best left to the trial court's assessment of the juror's impartiality, credibility, and demeanor. *See Patton v. Yount*, 467 U.S. 1025, 1038 (1984).

"In a criminal case, any private communication, contact, or tampering directly or indirectly, with a juror during a trial about the matter pending before the jury is, for obvious reasons, deemed presumptively prejudicial, if not made in pursuance of known rules of the court and the instructions and directions of the court made during the trial, with full knowledge of the parties." *Remmer*, 347 U.S. at 229. "The presumption is not conclusive, but the burden rests heavily upon the Government to establish, after notice to and hearing of the defendant, that such contact with the juror was harmless to the defendant." *Id.* (citations omitted). Furthermore, "[t]he presumption of prejudice is effectively rebutted by a juror's credible profession of impartiality." *Bease v. Att'y Gen.*, No. 16-2829, 2025 WL 2848548, at *7 (D.N.J. Oct. 8, 2025) (quoting *United States v. Smith*, 319 F. Supp. 2d 527, 533 (E.D. Pa. 2004)).

Initially, the state courts' decisions disposing of the issues regarding Juror No. 12 were not contrary to clearly established federal law. There is no indication that the state courts either applied

[6] Petitioner notes that, in certain circumstances, bias is conclusively presumed as a matter of law (Reply at 4). However, he does not assert that the circumstances here triggered any presumption, and the Court does not discern any basis for presuming bias.

a rule contradicting the governing law set forth in United States Supreme Court precedent or confronted a set of facts that were materially indistinguishable from United States Supreme Court precedent and arrived at a different result than the Supreme Court. *See Eley*, 712 F.3d at 846.

Furthermore, given the relevant United States Supreme Court precedent and the factual record, the state courts reasonably rejected Petitioner's claim that "he was denied his Sixth Amendment right to a fair and impartial jury" because of the assistance provided to Juror No. 12 regarding his landlord-tenant matter, (28T at 24:17–18). In fact, as the PCR court emphasized, the trial court "conducted a voir dire of juror number 12 before deliberations began to determine whether or not he was, in fact, tainted." (*Id.* at 25:15-17). *Voir dire* is the preferred method of protecting a defendant's constitutional right to an impartial jury. *See Mitchell*, 690 F.3d at 141. The trial court specifically asked the potentially compromised juror "[d]id those events [regarding assistance he received], in any way, effect your ability to decide the case based upon the evidence presented, the testimony of the witnesses, and the credibility of the witnesses[.]" (28T at 25:18–22). "Juror Number 12 responded, No." (*Id.* at 25:22). The trial court then asked the juror whether "the fact that law enforcement is in the case on behalf of the State, and law enforcement, though a different branch, assisted you with regard to the landlord-tenant situation, does that effect your ability to look at this fairly and clearly and make a decision based on the merits[,]" and "[t]the juror, again, responded, no." (*Id.* at 25:23–26:4). Given this *voir dire*, it was objectively reasonable to conclude that "any risk of jury taint or bias was thereby eliminated." (*Id.* at 26:7–8).

As noted above, Petitioner argues that the state courts' disposition of his juror claim was contrary to, and an unreasonable application of, clearly established federal law and was based on an unreasonable determination of the facts in light of the evidence present in the state court

proceedings. However, particularly in light of the deferential standards of review mandated by the AEDPA, Petitioner's various arguments lack merit.

First, there is no indication that the trial court's handling of Juror No. 3 (the juror that could not be located) or Juror No. 10 (the sleeping juror) violated Petitioner's federal constitutional rights. Juror No. 3 disappeared before the trial commenced, and Juror No. 10 was designated as an alternate juror. To the extent that Plaintiff contends that the trial court failed to adhere to New Jersey Court Rule 1:8-2(d)(1), it is well established that the mere violation of state law does not provide a basis for granting federal habeas relief. *See Johnson*, 117 F.3d at 109. In addition, Rule 1:8-2(a) states that the deliberating jury in a criminal action shall consist of twelve persons. Rule 1:8-2(d)(1) explicitly grants the trial court "discretion" to impanel a jury of such number as "it deems necessary" to ensure that a sufficient number (i.e., twelve) will remain to deliberate and states that, if a sworn juror is excused before opening statements begin, another juror "may" be impanelled and sworn. Petitioner also indicates that he had a federal constitutional right under either the Sixth Amendment or the Due Process Clause of the Fourteenth Amendment to proceed to trial with twelve jurors and two alternates. However, Petitioner fails to cite, and the Court has not found, any Supreme Court holding adopting such a position.

Furthermore, the state courts credited Juror No. 12 sworn statements on *voir dire* that the assistance he received regarding the landlord-tenant issue in no way affected his ability to decide the case based on the evidence presented, the testimony of the witnesses, and the witnesses' credibility and the fact that law enforcement was involved in the case on behalf of the prosecution and a different law enforcement branch helped him with that situation did not impact his ability to look at this case fairly and clearly and make a decision based on the merits. (*See* 28T at 25:17–26:4). "The Supreme Court has recognized that there are good reasons to apply the statutory

presumption of correctness to the trial court's resolution of issues of juror impartiality in habeas proceedings[,]" such as the fact that this resolution has only been made after a *voir dire* proceeding was conducted, the significance of juror credibility and demeanor in making this determination, and the special deference owed to the trial court's resolution of such matters on direct appeal. *Davis v. Johnson*, No. 18-12645, 2025 WL 1189914, at *12 (D.N.J. Apr. 24, 2025) (citing *Patton*, 467 U.S. at 1038). The state courts' factual findings as to juror impartiality are presumptively correct under § 2254(d), and Petitioner has failed to provide any evidence, let alone clear and convincing evidence, to rebut their findings under § 2254(e)(1) that Juror No. 12 was not biased because of the assistance he was provided regarding the landlord-tenant issue. Moreover, given the existing state court record, the state courts' disposition of the juror impartiality issue was neither an unreasonable application of clearly established federal law as established by the United States Supreme Court nor based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

Because the state courts reasonably determined that Juror No. 12 was not biased as a result of the assistance (and Petitioner has failed to marshal clear and convincing evidence rebutting such findings), the fact that the trial court did not conduct the *voir dire* of Juror No. 12 until after it instructed the jury, the failure to replace Juror No. 12, and the designation of Juror No. 10 as an alternate are irrelevant to Petitioner's jury bias allegations. Petitioner emphasizes the possibility that Juror No. 12 told his fellow jurors about the assistance he received during the trial before the *voir dire* and the trial court's instruction not to discuss the matter with others. However, he provides nothing but speculation in support of his assertions. In fact, Petitioner acknowledges that "the trial court had never asked Juror No. 12 whether he had already discussed anything concerning the assistance provided to him with any of the other jurors." (Reply at 13). The trial court gave

both defense counsel and the prosecutor the opportunity to ask Juror No. 12 additional questions, and the prosecutor, counsel for the co-defendant, and Petitioner's own attorney indicated that they had no additional questions for the juror and were satisfied with the proceeding. (6T at 180:24–81:4, 181:18–21). It is well established that habeas petitioners bear the burden of establishing their entitlement to relief for each claim presented in a petition based upon the record that was before the state court. *See Parker*, 567 U.S. at 41; *Eley*, 712 F.3d at 846. A federal court reviewing the state court's adjudication under § 2254(d)(1) generally must confine its examination to evidence in the record, *see Cullen*, 563 U.S. at 181–82, and § 2254(d)(2) explicitly refers to "the evidence presented in the State court proceeding." Accordingly, the Court rejects Petitioner's unsupported assertions regarding the possibility that Juror No. 12 spoke with other jurors about the assistance provided regarding his personal landlord-tenant problem and that their discussions somehow tainted or biased the other jurors against Petitioner.[7]

For the foregoing reasons, the Court **DENIES** Grounds Four and Five.

### D. Ground Six: THE STATE COURT'S RULING THAT PETITIONER'S SENTENCE DID NOT VIOLATE BLAKELY V. WASHINGTON, 542 U.S. 296 (2004) WAS CONTRARY TO CLEARLY ESTABLISHED FEDERAL LAW THEREFORE THE WRIT SHOULD ISSUE.

On direct appeal, Petitioner argued that the imposition of non-presumptive sentences violated *Blakely*. *See Shaheed*, 2006 WL 1194981, at *5. The Appellate Division agreed with Petitioner and remanded for resentencing under *Blakely* and *State v. Natale*, 184 N.J. 458 (2005):

7 Furthermore, as Respondent points out, "[t]here was no reason to assume the juror had discussed the personal and likely embarrassing matter of his eviction with other jurors, and thus no reason to question him about possible conversations with his fellow jurors, or to voir dire the entire jury." (Resp. at 40). Petitioner does not address this point in his Reply. Similarly, he does not dispute the trial court's explanation that this was "[n]ot a police case" and "[t]he jury is not going to make a determination of innocence and guilt on what the police did in this case" but instead was "an identification case, an alibi case, and the fact witnesses are going to be the ones that are critical[.]" (5T at 97:6–98:2). Particularly given the nature of the case, it is inconceivable that, even if they had been told of the assistance the trial court and a different law enforcement branch had provided to another juror regarding the juror's landlord-tenant problem, such knowledge would bias the jurors (who were not themselves the recipients of any assistance) in favor of the prosecution and against the defense.

> Defendant argues that the terms imposed violate *Blakely v. Washington*, *supra*. We agree. In *Natale II*, *supra*, 184 N.J. at 466, our Supreme Court held "that a sentence above the presumptive statutory term based solely on a judicial finding of aggravating factors, other than a prior criminal conviction, violates a defendant's Sixth Amendment jury trial guarantee." Thus, when a defendant receives a sentence higher than the presumptive term based on a judicial finding other than a prior criminal conviction, his sentence does not comply with the Sixth Amendment. *Ibid.* To remedy the constitutional defect in our sentencing code that permitted sentencing judges to impose a term above the presumptive based on the finding of aggravating factors other than a prior conviction, the Court eliminated presumptive terms, but left intact the sentencing ranges contained in *N.J.S.A.* 2C:43-6a. *Id.* at 487.
>
> For those defendants whose cases were on direct appeal as of the date of the decision or who had raised this challenge to their sentences at trial or on direct appeal, and who had been sentenced to a term above the presumptive in violation of the Sixth Amendment, the Court ordered a new sentencing hearing. *Id.* at 494. At that hearing, which will be based on the record at the prior sentencing proceeding, the defendant is entitled to have "the trial court . . . determine whether the absence of the presumptive term in the weighing process requires the imposition of a different sentence." *Id.* at 495-96.
>
> The trial judge found the following aggravating factors: *N.J.S.A.* 2C:44-1a(3) (the nature and circumstances of the offense); *N.J.S.A.* 2C:44-1a(2) (the risk that defendant will commit another crime); *N.J.S.A.* 2C:44-1a(6) (the extent of defendant's prior criminal record); *N.J.S.A.* 2C:44-1a(9) (the need to deter defendant and others from violating the law); and *N.J.S.A.* 2C:44-1a(13) (that defendant used or was in possession of a stolen motor vehicle while in the course of committing the crimes). He did not find any mitigating factors.
>
> The judge did not base factors (1) and (13) exclusively on defendant's prior criminal record. Accordingly, we are constrained, in light of *Natale II*, to remand for consideration whether the judge would impose a lesser sentence in the absence of the presumptive terms on defendant's convictions on Counts Three, Four, Five, Six, Seven, Eight, Eleven, and Fourteen.

*Shaheed*, 2006 WL 1194981, at *14.

The trial court resentenced Petitioner, Petitioner appealed, and the Appellate Division,

finding that "the remanded issues were not adequately addressed" (including the determination of whether, in light of *Natale*, "a lesser sentence should be imposed on certain counts in the absence of presumptive terms") remanded for further reconsideration of these issues. (D.E. No. 8-9 at Pa1). "On remand, the judge provided a detailed explanation of reasons for imposing the same aggregate custodial sentence that had been imposed when defendant was first sentenced[,]" and the Appellate Division affirmed (and the New Jersey Supreme Court denied certification). *Shaheed*, 2016 WL 5832129, at *3.

In his Reply, Petitioner argues that "the New Jersey Supreme Court's attempt to remedy the wholesale violations of *Blakely v. Washington* by New Jersey's judicial system in essence did not cure the Sixth Amendment violations." (Reply at 24 (stating that, although the New Jersey Supreme Court "unconstitutionally legislated a new sentencing scheme from the bench via *State v. Natale*," this process did not remedy the *Blakely* violations)). According to Petitioner, because he received the same sentence, which was based on judicial findings of fact, the constitutional error was not corrected. (*Id.*). He indicates that he should have been provided a new sentencing proceeding where a jury made the required special findings. (*Id.*).

However, as Petitioner explains, (*id.* at 20–23), in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), the United States Supreme Court held that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt[,]" *id.* at 490. *Blakely* defined the statutory maximum for purposes of *Apprendi* as "the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." *Blakely*, 542 U.S. at 303 (emphasis omitted) (citations omitted); *see also id.* at 303–04 (stating that "the relevant 'statutory maximum' is not the maximum sentence a judge may impose after finding

additional facts, but the maximum he may impose without any additional findings" (emphasis omitted)). Plaintiff acknowledges that the Sixth Amendment permits judges to exercise broad discretion in imposing a sentence within the applicable maximum. (*See* Reply at 21 ("The Court noted, however, that when imposing a sentence within the statutory limits, judges still could consider the traditional factors relating to the crime and the offender." (first citing *Apprendi*, 530 U.S. at 481; and then citing *Natale*, 184 N.J. at 474–75)).

In *Natale*, the New Jersey Supreme Court reasonably applied *Blakely* (and *Apprendi*) by holding "that a sentence above the presumptive statutory term based solely on a judicial finding of aggravating factors, other than a prior criminal conviction, violates a defendant's Sixth Amendment jury trial guarantee." *Shaheed*, 2006 WL 1194981, at *14 (quoting *Natale*, 184 N.J. at 466). To remedy this constitutional violation, *Natale* "eliminated presumptive terms, but left intact the sentencing ranges contained in *N.J.S.A.* 2C:43-6a," and ordered a new sentencing hearing at which the defendant is entitled to have the trial court determine whether the absence of the presumptive term requires a different sentence. *Id.* (citing *Natale*, 184 N.J. at 487, 495–96). It is undisputed that, on remand, the trial court considered whether the absence of the stricken presumptive terms required a lesser sentence, and it answered this question in the negative. There is no indication that the sentences imposed exceeded the statutory ranges contained in § 2C:43-6a, or that the trial court somehow applied the eliminated presumptive terms.

Accordingly, for the foregoing reasons, Petitioner has failed to show that the state courts' rulings were contrary to, or an unreasonable application of, *Blakely*, or were based on an unreasonable factual determination. Ground Six is **DENIED**.

### E. Certificate of Appealability

Pursuant to 28 U.S.C. § 2253(c) & (d), a petitioner may not appeal from a final order in a

habeas proceeding where that petitioner's detention arises out of a state court proceeding unless he has "made a substantial showing of the denial of a constitutional right." "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude that the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). For the reasons expressed above, Petitioner's Grounds One, Three, Four, Five, and Six are all without merit and jurists of reason would not disagree with this Court's denial of Petitioner's habeas petition. Accordingly, Petitioner is denied a certificate of appealability.[8]

## IV. CONCLUSION

For the reasons stated above, the Court **DENIES** the Petition and **DENIES** a certificate of appealability. An appropriate Order follows.

**Dated: August 19, 2026**

*s/ Esther Salas*
**Esther Salas, U.S.D.J.**

[8] In his Petition, Petitioner (in passing) requests "[a]n evidentiary hearing on the Petitioner's claims, which was denied in state court[.]" (Pet. at 16). "Evidentiary hearings are available in § 2254 proceedings only in very limited circumstances." *Lucas v. Nogan*, No. 23-1854, 2026 WL 512235, at *2 (D.N.J. Feb. 24, 2026) (first citing 28 U.S.C. § 2254(e)(2); then citing *Cullen*, 563 U.S. at 181; and then citing *Fooks v. Superintendent, Smithfield SCI*, 96 F.4th 595, 597–98 (3d Cir. 2024)). Petitioner has failed to show such circumstances. Specifically, the Third Circuit has concluded that district courts generally cannot conduct evidentiary hearings to supplement the state court record under § 2254. *See Fooks*, 96 F4th at 597–98 (recognizing limited exception where the state court has denied a hearing because it thought the petitioner would lose even if the allegations were presumed true and that ruling was unreasonable under clear federal law).